Patricia A. STEPHENS, Plaintiff,

v.

Alfred V. MELSON et al., Defendants.

Civ. A. No. 75–77.

United States District Court,
D. Delaware.

Feb. 1, 1977.

Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, Del., and Allen H. Smith and Mark David Frankel, York, Pa., of counsel, for plaintiff.

Richard W. Pell of Tybout & Redfearn, P.A., Wilmington, Del., for defendants Melson and McCabe.

Robert G. Carey of Prickett, Ward, Burt & Sanders, Wilmington, Del., for defendant Nationwide.

LATCHUM, Chief Judge.

Patricia A. Stephens (the "plaintiff") purchased a 1971 Dodge Dart in August 1971 for $2,700.[1] Although her car was initially insured by the defendant Nationwide Mutual Insurance Company ("Nationwide"), Nationwide notified the plaintiff in January 1972 that her automobile insurance would

---

1. Docket Item 1, par. 2.

be canceled.[2] The plaintiff then attempted to procure substitute coverage from the defendant Alfred V. Melson ("Melson"), vice president of the defendant C. L. McCabe Insurance Agency ("McCabe"). Melson was asked to provide coverage identical to that contained in the initial Nationwide policy destined for cancellation.[3] Melson obtained insurance for the plaintiff through the assigned risk pool; coincidentally Nationwide was randomly selected to provide the new coverage. The policy which plaintiff received differed in two respects from her initial Nationwide coverage.[4] First, Melson failed to obtain collision protection for the plaintiff; her first policy had had collision coverage limited only by a $50 deductible provision. Second, Delaware's modified "no-fault" statute became effective in January 1972,[5] and the new policy reflected that legislation by additionally providing the statutory minimum coverage of $10,000 for any loss of wages or medical expenses incurred by plaintiff from an accident involving her car. Plaintiff did not have this coverage under her original policy. In March 1972, the plaintiff was involved in a one-car accident while operating the Dodge Dart which was insured by the new Nationwide policy.[6]

After the accident, plaintiff obtained three estimates for the repair of her car. The lowest estimate was $1,063, and the repairs were made although plaintiff was not entirely satisfied with the work. Melson, evidently recognizing his earlier oversight on the collision coverage, personally paid $963 to the repair shop.[7] Also, Nationwide has paid plaintiff approximately $3,500 for lost wages and medical expenses.[8] Plaintiff received her last payment from Nationwide in February 1973 and, since that date, has not submitted any additional claims to Nationwide.[9]

Plaintiff alleges that diversity of citizenship provides this court with subject matter jurisdiction over her suit, denominated an action for breach of contract. It is clear that the diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1) is satisfied.[10] However, despite plaintiff's allegation that the amount in controversy exceeds $10,000 exclusive of interest and costs, the defendants have moved to dismiss, pursuant to Rule 12(b)(1), F.R.Civ.P.,[11] on the ground that it is clear to a legal certainty that plaintiff's claims do not amount to $10,000 exclusive of costs and interest, a necessary prerequisite for the jurisdiction of this court.

The plaintiff alleges that the defendants breached their contract with her, apparently, by failing to provide the coverage she requested.[12] By asserting in a conclusory fashion that the defendants dealt with her in bad faith and fraudulently, plaintiff also seeks exemplary damages.[13]

The liability of McCabe and Melson is predicated upon Melson's failure to obtain collision insurance for the plaintiff. The

2. *Id.*

3. *Id.,* par. 3; Docket Item 29, p. 12.

4. The first policy is Ex. 1 to Docket Item 1; the second policy is Ex. 4 to Docket Item 1.

5. 21 Del.C. § 2118.

6. Docket Item 29, pp. 29–32. Although only seven months old at the time of the accident, plaintiff's car already had traveled 32,000 miles. *Id.,* p. 33.

7. *Id.,* p. 37.

8. Docket Item 31, No. 14(b) & attachments.

9. Docket Item 29, p. 40.

10. Plaintiff was a citizen of Pennsylvania when this suit was filed. Melson was a Delaware citizen and McCabe was a Delaware corporation. Nationwide was an Ohio corporation.

11. Docket Items 36 & 37. *See Mortensen v. First Federal Savings & Loan Ass'n,* 549 F.2d 884, at 890–891 (C.A. 3, 1977).

12. Docket Item 1, par. 15. Plaintiff has encountered serious difficulty in describing the relief that she seeks. *See, e. g.,* Docket Item 29, pp. 51–54.

13. Plaintiff has failed completely to plead circumstances underlying her charges of fraud with the particularity demanded by Rule 9(b), F.R.Civ.P.

maximum possible value of plaintiff's car can be fixed at its purchase price of $2,700. The damage estimate was $1,063. Melson paid $963 for the benefit of the plaintiff. Thus, it is obvious that any liability of Melson and McCabe arising from breach of contract is considerably less than $2,700.

The maximum amount for lost wages and medical expenses that plaintiff could have recovered under her policy with Nationwide was $10,000. Because Nationwide has paid the plaintiff approximately $3,500, the maximum amount which she could recover from Nationwide for breach of its contract is approximately $6,500.

On the other hand, plaintiff contends that her demand for exemplary damages provides a means of meeting the jurisdictional amount.

■■■ In determining whether the necessary jurisdictional amount is at stake, actual and exemplary damages must be aggregated. *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). But the mere averment by the plaintiff that the amount in controversy requirement is satisfied by a claim for exemplary damages does not prevent the Court from probing the relevant jurisdictional facts, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and "where it is clear to a legal certainty that the relief sought is unavailable the amount attributed to it may not be considered in computing the jurisdictional amount." *Gray v. Occidental Life Insurance Co.*, 387 F.2d 935, 936 (C.A. 3, 1968), *cert. denied*, 391 U.S. 926, 88 S.Ct. 1825, 20 L.Ed.2d 665 (1968). Hence, defendants' motions to dismiss require the Court to determine whether it appears to a legal certainty that plaintiff's claim is really for less than the $10,000 jurisdictional

amount. *St. Paul Indemnity Co. v. Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

■■■ Under Delaware law,[14] exemplary damages generally cannot be obtained for breach of contract. *White v. Metropolitan Merchandise Mart*, 107 A.2d 892, 894 (Del. Super.1954); 5 Corbin on Contracts § 1077.[15] Furthermore, even if the plaintiff's allegations were construed, in the face of plaintiff's express reliance on breach of contract, to charge tortious conduct, neither the complaint nor the record suggests in any way that any wrongful act of the defendants was wanton or willful. "[E]xemplary damages are allowed [by Delaware courts] not by way of recompense for injury, but as punishment to the tort feasor when his wrongful act was committed wilfully or wantonly." *Riegel v. Aastad*, 272 A.2d 715, 718 (Del.Supr.1970). Simply to assert bad faith on the part of defendants and demanding exemplary damages without any factual basis is insufficient to establish the jurisdictional amount. *Gray v. Occidental Life Insurance Co., supra* ; *Fritz v. Warner-Lambert Pharmaceutical Co.*, 349 F.Supp. 1250 (E.D.N.Y. 1972).

■ In sum, the maximum amount which plaintiff could recover from McCabe and Melson is substantially less than $2,700, and Nationwide can be liable for no more than approximately $6,500.[16] Therefore, because exemplary damages are not available in this case under Delaware law, it is clear, to a legal certainty, that the jurisdictional amount of $10,000 is not in controversy. Accordingly, this court lacks subject matter jurisdiction over these claims asserted in diversity and the suit must be dismissed.

An order will be entered in accordance with this memorandum opinion.

---

**14.** No party contends that Delaware law is not controlling.

**15.** See generally, *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834, at 840 (C.A. 3, 1977); *Stern & Co. v. State Loan and Finance Corp.*, 238 F.Supp. 901, 910 (D.Del. 1965) (applying Pennsylvania law).

**16.** It must also be noted that claims against separate defendants cannot be aggregated in an effort to reach the jurisdictional minimum of $10,000. *Citizen's Bank v. Cannon*, 164 U.S. 319, 322, 17 S.Ct. 89, 41 L.Ed. 451 (1896).