**HOOVER GROUP, INC.,**
**Plaintiff–Appellee,**

v.

**CUSTOM METALCRAFT, INC., and**
**Dwayne Holden, Defendants–**
**Appellants.**

No. 94–1285.

United States Court of Appeals,
Federal Circuit.

May 24, 1996.

---

Timothy C. Russell, Sonnenschein Nath & Rosenthal, Washington, D.C., argued, for plaintiff-appellee. With him on the brief was Faith H. Spencer.

Dennis L. Thomte, Zarley, McKee, Thomte, Voorhees & Sease, Omaha, Nebraska, argued, for defendants-appellants.

Before ARCHER, Chief Judge, and NEWMAN and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Mr. Dwayne Holden appeals the decisions of the United States District Court for the District of Nebraska, (1) denying his motion to dismiss the complaint against him as an individual for improper venue and (2) holding

him personally liable for infringement of Hoover's United States Patents Nos. 4,840,-284 and 4,785,958.[1] We affirm the decision that venue was proper, and reverse the judgment of personal liability.

# I

## VENUE

Hoover Group, Inc. (Hoover) and Custom Metalcraft, Inc. (Custom) both manufacture tanks for the storage and transportation of materials. Hoover sued Custom for patent infringement, the cause was tried, and the district court held that the two Hoover patents in suit were valid and that both patents were infringed by certain of Custom's tanks. On appeal the Federal Circuit affirmed the decision as to validity of both patents and infringement of the '284 patent, and reversed the decision of infringement of the '958 patent. *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 36 USPQ2d 1101 (Fed.Cir.1995).

In a Second Amended Complaint that was filed after the district court had reached its decision of infringement, Hoover charged Mr. Holden with personal liability for infringement and inducement to infringe the Hoover patents. Mr. Holden was the president, chief executive officer, and principal shareholder of Custom. The complaint alleged that he made all major decisions concerning the business involved in this lawsuit; this allegation is accepted as true for venue purposes.

■ Venue is based on the facts alleged in the well-pleaded complaint. *See Dody v. Brown*, 659 F.Supp. 541, 544 n. 2 (W.D.Mo. 1987) ("in deciding the question of the defendants' contacts with this district for venue purposes, the Court will accept as true the facts pleaded in plaintiffs' complaint"); *McGhan v. F.C. Hayer Co.*, 84 F.Supp. 540, 541 (D.Minn.1949) (the plaintiffs need plead only "ultimate facts that sufficiently allege venue so as to sustain the Court's jurisdiction"). The district court denied Mr. Holden's motion to dismiss the Second Amended Complaint, ruling that sufficient facts were alleged to support personal jurisdiction and venue. Mr. Holden does not contest personal jurisdiction, but argues that venue is improper.

■ Venue in patent infringement trials is proper in any judicial district "where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). As discussed in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 16 USPQ2d 1614 (Fed. Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991), for venue purposes the residence of corporate defendants in patent infringement actions is governed by 28 U.S.C. § 1391(c), as amended in 1988. However, venue as to corporate employees charged with personal liability for acts taken as individuals, not as the alter ego of the corporation, does not flow automatically to forums in which venue is proper as to the corporation.

■ Venue requirements exist for the benefit of defendants, *VE Holding*, 917 F.2d at 1576, 16 USPQ2d at 1615. When the cause of action is personal to the individual defendant, the venue requirement must be met as to that defendant. 1A(2) J. Moore et al., *Moore's Federal Practice* ¶ 0.340 (2d ed.1995). In comparison, venue for personal liability of a corporate officer/owner for acts of infringement by the corporation, whether or not the facts support piercing the corporate veil, may reasonably be based on the venue provisions for the corporation, 28 U.S.C. §§ 1400(b) and 1391(c). *See Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265, 225 USPQ 350, 356 (Fed.Cir.1985) ("The precedents establish that a court which has jurisdiction over a corporation has jurisdiction over its alter egos.").

■ The district court, discussing Mr. Holden's case, did not distinguish between the charges of inducement to infringe and direct infringement, and did not require that the corporate veil be penetrated. However,

---

**1.** *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, No. 4:CV91–3053 (D.Neb. Nov. 24, 1993); *Hoo-ver Group, Inc. v. Custom Metalcraft, Inc.*, No. 4:CV91–3053 (D.Neb. Apr. 14, 1994).

the allegations of the complaint with respect to Mr. Holden's ownership, control, and active management of the corporation provide sufficient basis for finding that venue was proper under §§ 1400(b) and 1391(c). We have given weight to the convenience of parties and courts in this subsidiary action, wherein the issues of infringement were tried to the same court now considering Mr. Holden's personal liability for infringement. We have also given deference to the ruling of the district court that, on the pleadings, venue as to Mr. Holden was proper in Nebraska. The decision on this issue is affirmed.

## II

### LIABILITY

■ The district court found Mr. Holden personally liable for the infringement by the corporation, relying on *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1 USPQ2d 1081 (Fed.Cir.1986). In *Orthokinetics* the Federal Circuit found the officers of that corporation personally liable for the infringement by the corporation, applying the "general principles relating to piercing the corporate veil." 806 F.2d at 1579, 1 USPQ2d at 1090. However, acts of a corporate officer that are within the scope of the officer's responsibility are not always sufficient grounds for penetrating the corporate protection and imposing personal liability. *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553, 16 USPQ2d 1587, 1594 (Fed.Cir.1990). The policy considerations that underlie the corporate structure yield to personal liability for corporate acts only in limited circumstances.

■ In general, a corporate officer is personally liable for his tortious acts, just as any individual may be liable for a civil wrong. This general rule "does not depend on the same grounds as 'piercing the corporate veil,' that is, inadequate capitalization, use of the corporate form for fraudulent purposes, or failure to comply with the formalities of corporate organization." *Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala.1983) (citing *L.C.L. Theatres, Inc. v. Columbia Pictures Indus., Inc.,* 619 F.2d 455 (5th Cir.1980)). When personal wrongdoing is not supported by le-

gitimate corporate activity, the courts have assigned personal liability for wrongful actions even when taken on behalf of the corporation. However, this liability has been qualified, in extensive jurisprudence, by the distinction between commercial torts committed in the course of the officer's employment, and negligent and other culpable wrongful acts.

■ Thus when a person in a control position causes the corporation to commit a civil wrong, imposition of personal liability requires consideration of the nature of the wrong, the culpability of the act, and whether the person acted in his/her personal interest or that of the corporation. *See* 3A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* §§ 1134–1166 (1994 Revised Volume) (XXIX "Liability of Officers and Directors to Third Persons for Torts"). The decisions have not always distinguished among the various legal premises, *i.e.* (1) justification for piercing the corporate veil based on such criteria as absence of corporate assets or use of the corporate form for illegal purposes; (2) corporate commitment of a commercial tort (such as interference with contract or business advantage, or patent infringement) caused by the officer acting as agent of the corporation; (3) actions similar to (2) but exacerbated by culpable intent or bad faith on the part of the officer; or (4) personal commitment of a fraudulent or grossly negligent act.

For example, corporate officers have been held personally liable when they participated in conversion, *id.* § 1140, breach of fiduciary duty, *id.* § 1141, fraud, *id.* § 1143, and malicious prosecution, *id.* § 1160; and have been held not to be personally liable for commercial torts such as interference with contractual relations if they were acting in the corporation's interest, *id.* § 1158.10. The fact-dependency of such issues is apparent in decisions relating to patent infringement. *Compare Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1304, 12 USPQ2d 1299, 1303 (Fed. Cir.1989) (finding personal liability of corporate officers/owners who gave false assurances of corporate solvency) *with Manville Sales,* 917 F.2d at 553, 16 USPQ2d at 1594 (it must be shown that corporate officers

**1412**

knew the acts would be infringing in order to incur personal liability for inducing infringement). In *Manville Sales* the court stated that "to be personally liable for Paramount's infringement under section 271(a), there must be evidence to justify piercing the corporate veil." *Id.* at 552, 16 USPQ2d at 1593.

■ In the case at bar it was not alleged that Custom's corporate structure was a sham, or existed merely to shield Mr. Holden from liability for "fraud or wrong" or violation of any legal duty. *See generally* 1 *Fletcher* § 41.10 (discussing the alter ego doctrine). Although Mr. Holden, as the chief executive officer and principal owner, can be viewed as controlling Custom's commercial activities, the district court did not pierce the corporate veil. However, the record shows that Mr. Holden made a straightforward commercial response to the assertions of patent infringement, including prompt consultations with counsel. It must be recognized that there were differences between the patented and the accused structures; it is relevant that we have reversed the district court's finding of infringement as to one of the two patents in suit.

■ The district court also relied on 35 U.S.C. § 271(b), which provides that "whoever actively induces infringement of a patent shall be liable as an infringer," and on this court's ruling that for a corporate officer to be personally liable for inducing infringement, it is not necessary that the corporate veil be pierced. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1578–79, 1 USPQ2d 1081, 1090 (Fed.Cir.1986). How-

ever, the officer must act culpably in that the officer must actively and knowingly assist with the corporation's infringement. *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668, 7 USPQ2d 1097, 1103 (Fed.Cir. 1988) (the officer must have possessed specific intent to "aid and abet" infringement). It is an insufficient basis for personal liability that the officer had knowledge of the acts alleged to constitute infringement. *Manville Sales,* 917 F.2d at 553, 16 USPQ2d at 1594 (Fed.Cir.1990); *Hewlett–Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1468–69, 15 USPQ2d 1525, 1528–29 (Fed.Cir.1990); *Fletcher* § 1137.

■ In sum, unless the corporate structure is a sham, as is not here asserted, personal liability for inducement to infringe is not automatic but must be supported by personal culpability. The district court did not find bad faith or fraud or culpable intent on the part of Mr. Holden. The court erred in imposing liability although the corporate veil was not pierced. The ruling that Mr. Holden is personally liable for Custom's infringement is reversed.

Costs to Mr. Holden.

*REVERSED.*